## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CRAIG SHAPIRO and JULIE SHAPIRO, individually, and as guardians of their minor child, B.S.,<br><br>Plaintiffs,<br><br>v.<br><br>JUUL LABS INC.; ALTRIA GROUP, INC.; PHILIP MORRIS USA INC.; MY VAPOR HUT, INC. d/b/a 1ST WAVE VAPOR; EDGAR F. DI PUGLIA in his capacity as owner of THE SMOKE HOUSE SMOKE SHOP,<br><br>Defendants. | Case No. _____<br><br>Action Filed:  May 17, 2019<br>Action Served:  May 22, 2019 |

## DEFENDANTS ALTRIA GROUP, INC. AND
## PHILIP MORRIS USA INC.'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Altria Group, Inc. and Philip Morris USA Inc. (collectively, the "Removing Defendants") hereby give notice of removal of this action, captioned *Craig Shapiro et al. v. JUUL Labs Inc. et al.*, bearing case number CACE-19-010866, from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to the United States District Court for the Southern District of Florida.   Pursuant to 28 U.S.C. § 1446(a), the Removing Defendants provide the following statement of the grounds for removal:

## BACKGROUND

1.      On May 17, 2019, Plaintiffs filed this lawsuit in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.   The Complaint (attached hereto as **Exhibit 1**) asserts claims against the following defendants:   JUUL Labs, Inc. ("JLI"); Altria Group, Inc. ("Altria"); Philip Morris USA Inc. ("PM USA"); My Vapor Hut, Inc. d/b/a 1st Wave Vapor ("Vapor Hut"); and Edgar F. Di Puglia in his capacity as owner of The Smoke House Smoke Shop ("Smoke House").

2.      JLI, Altria, and PM USA are not citizens of Florida for diversity purposes. Compl. ¶¶ 5-7.

3.      Vapor Hut and Smoke House are alleged to be citizens of Florida for diversity purposes.  *Id*. ¶ 9-10.

4.      Plaintiffs' claims are based on the design, manufacture, promotion, marketing, and sale of JLI products.  *Id*. ¶¶ 22-54.  Plaintiffs state that their "claims arise out of JUUL's fraudulent concealment of material facts concerning the JUUL e-cigarette and representations about the JUUL e-cigarettes' nicotine content, its addictiveness, and the physiological effects of JUUL e-cigarettes."  *Id*. ¶ 34.  Plaintiffs also allege that the "JUUL e-cigarette is defectively designed and therefore unreasonably dangerous."  *Id*. ¶ 28.

5.      The Complaint also alleges "Defendants JUUL, Altria and PM USA have been conspiring[] to sell and promote JUUL and have engaged in unlawful marketing practices to do so."  *Id*. ¶ 89.  Plaintiffs' allegations concerning Altria and PM USA (together, "the Altria Defendants") focus on PM USA's historic advertising for cigarettes and Altria's recent investment in JLI.  *See id*. ¶¶ 73-103.

6.      Plaintiffs (B.S. and his guardians, Craig and Julie Shapiro) do not allege that B.S. has suffered any physical injury.   Instead, Plaintiffs allege "harm" in the form of "exposure to significant toxic substances, which *may* cause or contribute to causing disease; nicotine addiction; and economic harm in that he would not have purchased JUUL if he knew the facts."  *Id*. ¶ 3 (emphasis added).

7.      Based on these allegations, Plaintiffs raise eight claims against JLI and the Altria Defendants:   (1) civil conspiracy; (2) fraud; (3) strict product liability for failure to warn; (4) strict product liability for design defect; (5) negligence; (6) unjust enrichment; (7) violation of Florida's

Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203; and (8) preliminary and permanent injunction. *Id.* ¶¶ 87-146.

8.      Plaintiffs separately include as defendants two Florida retailers, the Vapor Hut and Smoke House (together, the "Retailer Defendants").   Plaintiffs' separate claim against the Retailer Defendants is based on their retail sale of JLI products in Florida and allegations that the Retailer Defendants sold JLI products to B.S.   *Id.* ¶¶ 148-51.

9.      Based on these allegations, Plaintiffs plead a *single*, *separate* cause of action against the Retailer Defendants for "strict liability."   *Id.* ¶¶ 147-52.

10.      Plaintiffs' Complaint is not the first action raising allegations concerning JLI products.   Rather, as set forth in JLI's Notice of Related Cases, this case raises allegations and claims that are similar to those raised in several other cases.   Four of these cases are currently pending before Judge William H. Orrick in the Northern District of California, including one case that was also removed to this Court and transferred there last April.   *See Zampa v. JUUL Labs, Inc.*, 2019 WL 1777730 (S.D. Fla. Apr. 23, 2019).   A motion to transfer is currently pending in a fifth case filed a month before this case in the Middle District of Florida.   *See NesSmith et al. v. JUUL Labs, Inc. et al.*, No. 8:19-cv-00884 (M.D. Fla.).[1]   Yet another case, *Swearingen et al. v. JUUL Labs, Inc. et al.*, No. 7:19-cv-00779-LSC, is currently pending in the Northern District of Alabama, where the parties are discussing its transfer to the Northern District of California for consolidation before Judge Orrick.

11.      The *NesSmith* case was filed by the same plaintiffs' counsel who filed this case. *See* Compl., *NesSmith* (Doc. 1).   Plaintiffs raise identical factual allegations in both cases and

---

[1]  The Removing Defendants and JLI respectfully submit that transfer is proper here also and are separately filing a motion requesting that relief.

virtually identical claims.   *See id.*   The *NesSmith* plaintiffs, however, do not bring claims against

retailers.   *See id.*   Instead, they bring claims only against JLI, Altria, and PM USA.   *See id.*

12.    Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders (other

than the Complaint) purportedly served on the Removing Defendants is attached hereto as

**Exhibit 2**.   A copy of all documents filed in the state court action (other than the Complaint) is

attached hereto as **Exhibit 3**.

## VENUE AND JURISDICTION

13.    Removal to this Court is proper under 28 U.S.C. §§ 89, 1391, 1441(a), and 1446(a)

because the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida,

where the Complaint was filed, is a state court within the Southern District of Florida.

14.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because

(1) there is complete diversity of citizenship between Plaintiffs and all properly joined defendants;

(2) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (3) all other

requirements for removal have been satisfied.

## BASIS FOR REMOVAL

## I.    THERE IS COMPLETE DIVERSITY OF CITIZENSHIP BETWEEN PLAINTIFFS AND ALL PROPERLY JOINED DEFENDANTS

15.    There is complete diversity of citizenship for purposes of federal jurisdiction.

Plaintiffs are Florida citizens, and the Removing Defendants and JLI are citizens of states other

than Florida.   Although Plaintiffs allege that the Retailer Defendants are citizens of Florida, the

citizenship of the Retailer Defendants should be ignored for purposes of diversity jurisdiction.

Plaintiffs do not, and cannot, allege a claim against the Retailer Defendants, and therefore the

Retailer Defendants' citizenship should be disregarded under the doctrine of fraudulent joinder.

Moreover, Plaintiffs' claims against the Retailer Defendants are severable and should be ignored

under Federal Rule of Civil Procedure 21.

**A.      Plaintiffs Are Diverse from JLI and the Altria Defendants**

**1.      Plaintiffs Are Citizens of Florida**

16.      Plaintiffs Craig Shapiro, Julie Shapiro, and B.S. are citizens of Florida.
Compl. ¶ 3.

**2.      The Removing Defendants and JLI Are Citizens of States Other Than Florida**

17.      For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."   28 U.S.C. § 1332(c)(1).

18.      Defendant JUUL Labs, Inc. is a corporation organized under the laws of Delaware with its principal place of business in San Francisco, California.   Compl. ¶ 5.

19.      Defendant Altria Group, Inc. is a corporation organized under the laws of Virginia with its principal place of business in Richmond, Virginia.   *Id.* ¶ 6.

20.      Defendant Philip Morris USA Inc. is a corporation organized under the laws of Virginia with its principal place of business in Richmond, Virginia.   *Id.* ¶ 7.

21.      Accordingly, there is complete diversity between Plaintiffs and the Removing Defendants and JLI.

**B.      The Citizenship of the Retailer Defendants Should Be Ignored Under The Doctrine of Fraudulent Joinder**

22.      Even where the face of a complaint shows a lack of complete diversity, removal based on diversity jurisdiction is proper where the doctrine of fraudulent joinder applies as to the non-diverse defendants.   "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."   *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).   Under this doctrine, "[w]hen a plaintiff names a non-diverse

defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand[.]"   *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

23.     As the Eleventh Circuit has explained, "[t]he removal process was created by Congress to protect defendants.   Congress 'did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.'   As the Supreme Court long ago admonished, 'the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court.'"   *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (citations omitted). In *Legg*, the Eleventh Circuit recognized the "common strategy employed" by plaintiffs in product liability cases in which plaintiffs "name local parties" as defendants—often local sales representatives and small enterprises—to defeat the "real target['s]" right to remove a case to federal court.   *Id.* at 1320.

24.     In the Eleventh Circuit, the doctrine of fraudulent joinder applies as to a non-diverse defendant where "there is no possibility the plaintiff can establish a cause of action against" that defendant.   *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998); *see also, e.g.*, *Hill Dermaceuticals, Inc. v. RX Solutions*, 306 Fed. App'x 450, 454 (11th Cir. 2008) (district court properly concluded that defendant was fraudulently joined where complaint did not allege facts establishing an alter ego or agency relationship, which was basis of alleged liability).

25.     "The potential for legal liability 'must be reasonable, not merely theoretical.'   In considering possible state law claims, possible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight.   That is possible.   Surely, as in other

instances, reason and common sense have some role.'"   *Legg*, 428 F.3d at 1325 n.5 (citations omitted).

26.     Plaintiffs' single, separate claim against the Retailer Defendants based on strict liability does not meet this standard, and therefore the citizenship of the Retailer Defendants should be ignored under the doctrine of fraudulent joinder.

27.     In Florida, a plaintiff cannot establish a cause of action for strict products liability without properly based allegations of "'physical harm . . . to the ultimate user or consumer, or to his property.'"   *Clements v. Attenti US, Inc.*, 735 F. App'x 661, 663 (11th Cir. 2018) (quoting *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 84 (Fla. 1976)).   Indeed, the Florida Supreme Court has long held that strict products liability can be imposed only if the defect "causes injury to a human being."   *West*, 336 So.2d at 86; *see also, e.g.*, *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distributors of Am., Inc.*, 444 So. 2d 1068, 1070 (Fla. 3d DCA 1984) (strict liability claims require "a defect which causes an injury to a human being").

28.     In *West*, the Florida Supreme Court expressly adopted the "doctrine of strict liability as stated by the" Restatement (Second) of Torts § 402A.   *West*, 336 So.2d at 87.   That section of the Restatement—entitled "Special Liability of Seller of Product for Physical Harm to User or Customer"—sets forth when a seller of a "product in a defective condition unreasonably dangerous to the user or consumer or to his property" may be "subject to liability for ***physical harm*** thereby caused to the ultimate user or consumer, or to his property."   Restatement (Second) of Torts § 402A (1965) (emphasis added); *see also Zyferman v. Taylor*, 444 So. 2d 1088, 1091 (Fla. 4th DCA 1984) (citing language from Restatement (Second) of Torts § 402A as "elements the [strict product liability] plaintiff must establish").

29.     Plaintiffs do not claim that B.S. has suffered any physical injury or that Plaintiffs have suffered injury to property when pleading their strict liability claim against the Retailer Defendants.   Compl. ¶¶ 147-52.   Nor do they plead any physical injuries, or even physical symptoms, or any property damage anywhere else in their Complaint.

30.     Instead, the only harm that Plaintiffs allege is "exposure" to substances, which in the future "*may* cause or contribute to causing disease; nicotine addiction; and economic harm in that [B.S.] would not have purchased JUUL if he knew the facts."   *Id*. ¶ 3 (emphasis added).   These three forms of harm do not allege property damage.   Moreover, none of these alleged harms constitutes a "physical injury" that is required to state a strict liability claim.

31.     *First*, Plaintiffs' claim concerning "exposure to significant toxic substances" does not allege a physical injury.   Indeed, rather than alleging an actual physical injury, Plaintiffs claim only that that these substances "*may* cause or contribute to causing disease."   Compl. ¶ 3 (emphasis added).   But the Florida Third District Court of Appeal has held that a plaintiff "cannot recover damages . . . for his enhanced risk of contracting cancer in the future."   *Eagle-Picher Indus., Inc. v. Cox*, 481 So. 2d 517, 520 (Fla. 3d DCA 1985); *see also Jacobs v. Osmose, Inc.*, 2002 WL 34241682, at *3 (S.D. Fla. Jan. 3, 2002) ("A plaintiff cannot recover damages merely for increased risk of contracting a disease in the future absent some claim of actual injury."); Order Granting Motion to Dismiss at 1-2, *Doss v. General Mills, Inc.*, No. 18-cv-61924 (S.D. Fla. June 14, 2019) (Doc. 36) (**Exhibit 4**) (allegations that "glyphosate may be harmful to human health" were insufficient to establish an injury in fact); *see also id.* at 5 ("Mere conjecture that something has the potential to be harmful is not enough.").   Courts around the country likewise have held that "[e]xposure to a potentially harmful substance does not in itself constitute a personal injury." *Paz v. Brush Engineered Materials Inc.*, 949 So. 2d 1, 5 (Miss. 2007); *see also, e.g.*, *In re MI*

*Windows and Doors, Inc. Prods. Liab. Litig.*, 2013 WL 1363845, at *4 (D.S.C. Apr. 3, 2013) (exposure to contamination without personal injury insufficient to plead strict liability claims); *Prue v. Fiber Composites, LLC*, 2012 WL 1314114, at *6 (E.D.N.Y. Apr.17, 2012) (similar); *Martin v. Home Depot U.S.A., Inc.*, 369 F. Supp. 2d 887, 891 (W.D. Tex. 2005) (similar).

32.     Courts elsewhere have similarly rejected strict liability claims after concluding that an increased risk of harm does not satisfy the "physical harm" requirement set forth in Restatement (Second) Torts § 402A, which the Florida Supreme Court adopted in *West*, 336 So.2d at 87.   As one court explained, "[t]he mere fact of risk without any accompanying physical injury is insufficient to state a claim for strict products liability."   *Mink v. Univ. of Chicago*, 460 F. Supp. 713, 719 (N.D. Ill. 1978); *see also, e.g. Sease v. Taylor's Pets, Inc.*, 700 P.2d 1054, 1060 (Or. Ct. App. 1985) (citing Restatement (Second) § 402A and holding that plaintiff could not "state a claim for strict products liability" based on allegations that product "increased the risk that he would suffer physical harm" where he did not "suffer physical harm").

33.     The same principles apply here.   Plaintiffs have not alleged a physical injury.   At most, they have alleged *potential* (and hypothetical) future injuries based solely upon B.S.'s purported exposure "toxic substances."   Compl. ¶ 3.

34.     *Second*, Plaintiffs' alleged "nicotine addiction" does not plead a physical injury that would allow Plaintiffs to bring a strict liability claim against the Retailer Defendants.   Indeed, Florida's Third District Court of Appeal—in ruling on a statute of limitations issue in a products liability action against tobacco companies—held that a cigarette smoker could not have filed a "non-frivolous" lawsuit against the tobacco companies until symptoms of a disease caused by tobacco addiction had actually manifested.   *See Frazier v. Philip Morris USA Inc.*, 89 So. 3d 937, 945 (Fla. Dist. Ct. App. 2012), *approved sub nom. Philip Morris USA, Inc. v. Russo*, 175 So. 3d

681 (Fla. 2015).   In other words, under Florida law, while tobacco addiction might result from smoking traditional cigarettes, it must cause physical injury in order to give rise to a potential cause of action.   In fact, courts in Florida hold that even a medical diagnosis that *could* lead to an injury is a "mere wrong without damage" for which "there is no cognizable cause of action." *Colville v. Pharmacia & Upjohn Co.*, 565 F. Supp. 2d 1314, 1322-23 (N.D. Fla. 2008) (finding that a medication consumer plaintiff could not satisfy products liability injury requirement even though plaintiff had been diagnosed with low bone density).

35.     Courts in other jurisdictions are in accord.   The California Supreme Court, for example, explained that "[t]he addictiveness of a product is distinct from its capacity to cause serious physical injury, as demonstrated by the fact that other addictive products are not associated with the same harmful consequences."   *Grisham v. Philip Morris USA Inc.*, 40 Cal. 4th 623, 643 (Cal. 2007).   As the court explained, the plaintiff's "efforts to break her nicotine addiction do not amount to an allegation that the addiction was causing her appreciable physical harm, nor that the addiction itself was actionable, other than as a cause of economic injury."   *Id.* at 641 n.11; *see also, e.g.*, *Spain v. Brown & Williamson Tobacco Corp.*, 872 So.2d 101, 114 (Ala. 2003) ("Assuming no other physical injury has previously manifested itself, the *economic loss* attributable to supporting an addiction is the first injury a smoker addicted to cigarettes sustains[.]") (emphasis added); *Craft v. Philip Morris Cos., Inc.*, 2003 WL 23355745, at *13 (Mo. Cir. Ct. 2003) (recognizing that "there is almost no legal authority suggesting that addiction per se is a personal injury"); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 749 (5th Cir. 1996) (noting that "no court in this country has ever tried an injury-as-addiction claim" and this theory presents an "immature tort").   In addition, courts in other contexts have found that addiction alone does not constitute a physical injury.   *See, e.g.*, *Sharples v. United States*, 2018 WL 5634355, at *2 (E.D.

Mich. 2018) ("physical pain and mental anguish as the result of his untreated drug addiction is insufficient to satisfy the 'physical injury' element of a Federal Tort Claims Act claim brought by prisoner"); *Mitchell v. Philip Morris Inc.*, 2000 WL 1848085, at *7 (S.D. Ala. 2000), *aff'd in part, vac'd in part*, *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309 (11th Cir. 2002) ("[n]icotine addiction . . . is not an injury that satisfies the physical injury requirement of [the Prison Litigation Reform Act] because it is not greater than *de minimis*").

36.     Consistent with these decisions, Florida courts do not permit recovery for mental or psychological harm where, as here, there are no physical injuries.   In *Brown v. Cadillac Motor Car Division*, the Supreme Court of Florida addressed "the question of whether a person who suffers no physical injuries . . . has a cause of action for mental distress or psychic injury[.]"   468 So. 2d 903, 904 (Fla. 1985).   The court answered that question in the negative.   "[P]sychological trauma must cause a demonstrable physical injury such as death, paralysis, muscular impairment, or similar objectively discernible physical impairment before a cause of action may exist."   *Id*. The court thus concluded that plaintiff's negligence claims failed despite "expert testimony at trial on the issue of a psychiatric disability," because plaintiff "failed to show a direct physical injury or any physical injury resulting from his mental distress."   *Id*.   The same is true here.   Plaintiffs do not plead any "discernible physical impairment" that has resulted from B.S.'s alleged nicotine addiction.   Accordingly, "nicotine addiction" standing alone does not allege physical harm.

37.     *Finally*, Plaintiffs' allegation of "economic harm" does not plead an injury that would be actionable under a theory of strict liability.   Courts have repeatedly ruled that strict liability claims require more than economic loss.   *See, e.g.*, *Tiara Condo Ass'n v. Marsh & McLennan Co.*, 110 So.3d 399, 404 (Fla. 2013) (Florida has "adopted the products liability economic loss rule, precluding recovery of economic damages in tort"); *Melton v. Century Arms,*

*Inc.*, 243 F. Supp. 3d 1290, 1302 (S.D. Fla. 2017) (dismissing strict liability and other tort claims because plaintiffs "allege only economic harm arising from the claims"); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1336 (S.D. Fla. 2013) (similar).

38.     Plaintiffs therefore fail to allege any personal injury or injury to property and have not alleged even an "arguable" strict liability claim against the Retailer Defendants.   As a result, the Retailer Defendants were fraudulently joined and should be ignored for purposes of diversity of citizenship, thereby creating complete diversity.

### C.     The Retailer Defendants Should Be Severed Under Rule 21

39.     Alternatively, the Plaintiffs' single claim against the Retailer Defendants is severable.   This presents an independent ground to ignore the citizenship of the Retailer Defendants for diversity purposes.   Relying upon Federal Rule of Civil Procedure 21, federal courts routinely deny remand and retain jurisdiction where non-diverse defendants are neither necessary nor indispensable under Federal Rule of Civil Procedure 19.   This is particularly true where the claims against the non-diverse defendants are different from the claims against the diverse defendants and the plaintiff retains a remedy against the non-diverse defendants in state court.   That is the case here:   (1) the Retailer Defendants are not necessary or indispensable, (2) Plaintiffs' single claim against them is distinct from their claims against the Removing Defendants and JLI, and (3) Plaintiffs retain a remedy against the Retailer Defendants in state court.

40.     "It is firmly established that Rule 21 'invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time,' such as when necessary to establish federal subject-matter jurisdiction."   *Payroll Mgmt., Inc. v. Lexington Ins. Co.*, 815 F. 3d 1293, 1298 n.8 (11th Cir. 2016) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)).   Courts therefore may "dismiss a nondiverse dispensable defendant from an action

initially brought in federal court under the pretense of diversity of citizenship grounds, in order to perfect diversity." *Byrd v. Howse Implement Co.*, 227 F.R.D. 692, 694 (M.D. Ala. 2005) (citing *Anderson v. Moorer*, 372 F.2d 747, 750 n.4 (5th Cir. 1967)).   When doing so, courts "consider whether any of the parties will be prejudiced by the dismissal of a nondiverse party" by "apply[ing] Rule 19," *Byrd*, 227 F.R.D. at 694, which governs whether a party is "necessary" and "indispensable."   *See, e.g.*, *Durham Commercial Capital Corp. v. Ocwen Loan Servicing, LLC*, 2015 WL 4164780, at *3 n.2 (S.D. Fla. 2015) ("Rule 19(a) governs the analysis used in determining whether a party is necessary, and Rule 19(b) controls the indispensability analysis.").

41.     Applying these principles, courts within this Circuit and around the country have severed dispensable, non-diverse defendants under Rule 19 and denied remand where severance "preserve[d] the Court's diversity jurisdiction." *Clements v. Essex Ins. Co.*, 2016 WL 3144151, at *3 (M.D. Fla. June 6, 2016); *see also, e.g.*, *Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 705-07 (D. Md. 2015); *Cooke-Bates v. Bayer Corp.*, 2010 WL 3984830, at *4 (E.D. Va. Oct. 8, 2010); *Mayfield v. London Women's Care, PLLC*, 2015 WL 3440492, at *5 (E.D. Ky. May 28, 2015); *McElroy v. Hamilton Cty. Bd. of Educ.*, 2012 WL 12871469, at *2-3 (E.D. Tenn. Dec. 20, 2012).   In *Joseph v. Baxter International, Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009), for example, plaintiffs brought a products liability action against the out-of-state manufacturer of the drug Heparin.   *Id.* at 870.   Before the case was removed, plaintiffs amended their complaint to add as defendants certain non-diverse healthcare providers, alleging that they engaged in "negligent acts and omissions in the administration of Heparin."   *Id.* at 871.   Despite the presence of these non-diverse healthcare provider defendants, the district court denied remand. The court reasoned that the healthcare provider defendants were "not necessary parties as the resolution of a claim against them would not necessarily resolve the [plaintiffs'] claim against [the

manufacturer]" and because the claims against the healthcare providers "differ[ed] from" the claims against the manufacturer.   *Id.* at 872.   The court explained that the healthcare provider defendants were dispensable because plaintiffs "retain an adequate remedy against the Healthcare Defendants as they can proceed with their claims in state court."   *Id.* at 873.   In addition, given the different factual basis for plaintiffs' medical malpractice claims against the healthcare providers, the court found that it could "sever them from the claims against [the manufacturer], and in doing so, perfect diversity jurisdiction over [the manufacturer]."   *Id.* at 874.

42.     The same principle applies here.   The Retailer Defendants are not necessary or indispensable, because Plaintiffs can resolve their claims and obtain a full recovery from the Removing Defendants.   *See, e.g.*, *Solnes v. Wallis & Wallis, P.A.*, 2013 WL 3771341, at *3 (S.D. Fla. 2013) (Rule 19 "applies only if full relief cannot be ordered among the existing parties"); *see also Temple v. Synthes Corp.*, 498 U.S. 5, 7-8 (1990) (recognizing that joint tortfeasors are not necessary parties under Rule 19).   Indeed, it is especially obvious that the Retailer Defendants are dispensable and unnecessary, given ***Plaintiffs' counsel filed an action raising identical allegations one month earlier in federal court that did not include claims against retailers***. *NesSmith* Compl. ¶ 3.   *See, e.g.*, *Andreasen v. Progressive Express Ins. Co.*, 276 F. Supp. 3d 1317, 1329 (S.D. Fla. 2017) (finding party was not necessary, and denying remand after severing non-diverse defendants, in part because "Plaintiff's behavior strongly suggests that his real agenda is to include an additional defendant merely to defeat diversity jurisdiction and to get this case back to state court.").

43.     Moreover, as in *Joseph*, 614 F. Supp. 2d 868, Plaintiffs' claims against the Retailer Defendants are different from the claims alleged against JLI and the Altria Defendants. Plaintiffs' claims against JLI and the Altria Defendants focus on their design, manufacture,

marketing, and promotion of JLI products that allegedly appealed to minors and contained more nicotine than traditional combustible cigarettes.   *See* Compl. ¶¶ 22-54; 73-103.   By contrast, Plaintiffs' allegations against the Retailer Defendants have nothing to do with designing, manufacture, marketing, or promotion of e-cigarettes.   They focus exclusively upon retail sales at two specific locations in Florida, and, more specifically, the Retailer Defendants' alleged sale of JLI products to one Plaintiff.   *Id.* ¶¶ 148-50.   As a result, these claims are extremely narrow in scope when compared to the broad nature of Plaintiffs' allegations against the Removing Defendants and discovery and litigation those allegations might entail.   It is apparent that the sole purpose of Plaintiffs adding the Retailer Defendants is to improperly thwart diversity jurisdiction.

44.     In addition, the distinction between Plaintiffs' claims against the Removing Defendants and Plaintiffs' claims against the Retailer Defendants is underscored by the causes of action pled in the Complaint.   Plaintiffs assert eight causes of action against each of the Removing Defendants, none of which includes the Retailer Defendants.   *Id.* ¶¶ 87-146.   Instead, they assert a single, separate cause of action against the Retailer Defendants that does not include the Removing Defendants.   *Id.* ¶¶ 147-52.   Thus, there is no overlap between the claims against the Removing Defendants and the Retailer Defendants.

45.     Finally, as in *Joseph*, if Plaintiffs want to pursue claims against the Retailers, Plaintiffs have an "adequate remedy . . . in state court."   *Joseph*, 614 F. Supp. 2d at 873.

46.     Accordingly, the Retailer Defendants are not necessary or indispensable under Rule 19, and Plaintiffs' claims against these two stores should be severed under Rule 21.   Doing so leaves complete diversity of citizenship, since Plaintiffs are Florida citizens, and the properly joined Defendants are not.   *See* 28 U.S.C. § 1332(a).

## II.      THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

47.      "[A] defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."   *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).   "Evidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation."   *Id*. at 553-54; *see also, e.g.*, *Goldstein v. GFS Mkt. Realty Four, LLC*, 2016 WL 5215024, at *3 (S.D. Fla. Sept. 21, 2016) (similar); *VIP Auto Glass, Inc. v. GEICO Gen. Ins. Co.*, 2017 WL 3712918, at *3 (M.D. Fla. Mar. 7, 2017) (similar).

48.      Plaintiffs seek (1) "[a]n order enjoining Defendants from further negligent, deceptive, unfair, and unlawful conduct as alleged herein," (2) "actual, compensatory, and consequential damages," (3) "monetary and equitable relief for diagnostic testing, medical monitoring, and nicotine cessation programs," (4) "restitution," (5) "reasonable attorneys' fees" and "costs," (6) "prejudgment and post-judgment interest," and (7) "other and further relief." Compl. at Prayer for Relief.   Aside from costs and interest, each of these items is relevant to the amount in controversy.

49.      Plaintiffs' "actual" and "compensatory" damages would include the amount spent by B.S. on JLI products.   Compl. ¶ 3 (alleging "economic harm in that [B.S.] would not have purchased JUUL if he knew the facts").   In addition, Plaintiffs seek "monetary and equitable relief for diagnostic testing, medical monitoring, and nicotine cessation programs."   Compl. at Prayer for Relief.   The cost of providing these remedies to B.S. would be significant and alone might meet the jurisdictional requirement.   *See, e.g.*, *Williams v. Alxial Corp.*, 2015 WL 5638080, at *5 (W.D. La. Sept. 24, 2015) (denying remand where "plaintiff's medical monitoring claim [would] easily push the relief sought in this case beyond the jurisdictional limit"); *Rice v. CSX*

*Transp., Inc.*, 2002 WL 35467650, at *8 (N.D. W. Va. Mar. 11, 2002) (denying remand where medical monitoring and research costs would exceed $75,000 even "when considering the value of such costs to one plaintiff").   Indeed, Plaintiffs allege that nicotine "is a carcinogen, as well as a toxic chemical associated with cardiovascular, reproductive, and immunosuppressive problems" and "adversely affects the heart, eyes, reproductive system, lungs, and kidneys."   Compl. ¶¶ 19-20.   Based on these allegations, Plaintiffs are likely to request several costly diagnostic tests and extensive medical monitoring over a period of several years.   Furthermore, Plaintiffs seek costly injunctive relief that, among other things, would foreclose sales of all JLI products pending approval by the FDA.   Compl. ¶ 146(d).

50.     In addition, Plaintiffs' request for attorneys' fees is further reason why the amount in controversy exceeds $75,000.   *See* § 768.79, Fla. Stat. (fee-shifting statute allowing recovery of attorney fees in certain situations); § 501.2105, Fla. Stat. (allowing recovery of attorney fees for FDUTPA claims).   "When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy."   *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000).   The Eleventh Circuit has not addressed whether to calculate this amount "as of the date of removal or through the end of the case."   *Frisher v. Lincoln Benefit Life Co.*, 2013 WL 12092525, at *4 (S.D. Fla. 2013).[2]   The latter approach, however, which considers the amount of fees that would be accrued throughout the case, is

_____

[2] Courts in this district have reached different conclusions when addressing this issue.   Although some decisions have stated that "the majority of district courts in this circuit" include attorney's fees accrued only through the date of removal, *Brown Heating & Air Conditioning, LLC v. Sunbelt Rentals, Inc.*, 2015 WL 12712059, at *5 (S.D. Fla. 2015), other courts have concluded that the amount in controversy should include fees that would be incurred during the course of the litigation.   *See, e.g.*, *Hall v. Am. Sec. Ins. Co.*, 2009 WL 2215131, at *1 (S.D. Fla. 2009) (including estimated future attorney's fees in the amount in controversy); *DO Rests., Inc. v. Aspen Specialty Ins. Co.*, 984 F. Supp. 2d 1342, 1345-47 (S.D. Fla. 2013) (similar).

consistent with the Eleventh Circuit's holding in *Morrison* that the calculation include a "reasonable amount" of the fees "authorize[d]" by the relevant statute.   228 F.3d at 1265.   That approach should be applied here.   For purposes analyzing the jurisdictional amount only, the fees that Plaintiffs would incur in this case therefore would be substantial.[3]

      51.     Finally, "[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered."   *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987).   When alleging their fraud claim,[4] Plaintiffs parrot the standard for punitive damages by alleging that "Defendants' conduct . . . was willful and malicious and was designed to maximize Defendants' profits even though Defendant knew it would cause loss and harm to Plaintiffs."   Compl. ¶ 103.[5]   Given Plaintiffs' allegations of "willful and malicious" conduct, it appears Plaintiffs will eventually attempt to amend their Complaint to add a specific punitive damages claim.   Under Florida's punitive damages statute, section 768.73, Fla. Stat., Plaintiffs might seek up to $2 million or four times the compensatory amount.   The Removing Defendants submit that no award of punitive damages would be proper and reserve their right to

---

[3] In one recent smoking and health case, for example, the same counsel representing Plaintiffs here sought attorney's fees at more than $1,000 per hour.   *See* Plaintiff's Attachment to Notice of Compliance at Columns 2 & 3, ATTY and Rate, *In re Engle Progeny Cases Tobacco Litig. (Grossman)*, No. 08-025828 (Fla. Cir. Ct.) (stating that rate for Scott P. Schlesinger was $1600/hour and rate for Jonathan R. Gdanski was $1200/hour) (excerpted and attached as **Exhibit 5**).   In another smoking and health case, a different group of plaintiff's counsel were awarded more than $1.4 million in attorney's fees, before that award was reversed on appeal.   *R.J. Reynold Tobacco Co. v. Ward*, 141 So. 3d 236 (Fla. 1st DCA 2014).

[4] Punitive damages generally can be recovered under an intentional fraud claim.   *See, e.g.*, *First Interstate Dev. Corp. v. Ablanedo*, 511 So. 2d 536, 537-38 (Fla. 1987) (punitive damages allowable based on claims sounding in fraud).

[5] *See, e.g.*, *Owens-Corning Fiberglas Corp. v. Ballard*, 749 So. 2d 483, 486 (Fla. 1999) ("[P]unitive damages are appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights and safety of others.").

challenge any such request.   But for removal purposes, this further escalates the amount in controversy above the $75,000 minimum.

## III.   ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED

### A.   This Notice of Removal Is Timely

52.   This Notice of Removal is timely filed.   JLI and PM USA were served with the Complaint on May 22, 2019.   Altria was served with the Complaint on May 23, 2019.   Because the Removing Defendants filed the Notice of Removal on June 21, 2019, removal is timely.   *See* 28 U.S.C. § 1446(b)(1).

### B.   All Properly Joined And Served Defendants Consent to Removal

53.   For purposes of removal based on diversity jurisdiction under 28 U.S.C. § 1332(a) and pursuant to 28 U.S.C. § 1446(b), all defendants who have been properly joined and served must consent to removal.

54.   Defendant JUUL Labs, Inc. consents to this removal, as indicated by its signing below.   Because the Retailer Defendants are not properly joined, their consent to removal is not required.   *See* 28 U.S.C. § 1446(b)(2)(A).

55.   By filing this Notice of Removal, the Removing Defendants do not waive any defenses that may be available to them and expressly reserve all such defenses.

56.   If any question arises as to the propriety of the removal to this Court, the Removing Defendants request the opportunity to present a brief and oral argument in support of their position that this case has been properly removed.   *See, e.g.*, *Dart Cherokee Basin*, 135 S. Ct. at 554.

## CONCLUSION

WHEREFORE, Altria Group, Inc. and Philip Morris USA Inc. hereby remove this action

from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to

the United States District Court for the Southern District of Florida.

DATED:   June 21, 2019

/s/ *Geoffrey J. Michael*
Geoffrey J. Michael
Florida Bar No.: 86152
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
Email: geoffrey.michael@arnoldporter.com

Attorneys for Defendants Altria Group, Inc. and
Philip Morris USA Inc.

**CONSENT TO REMOVAL:**

/s/ *George S. LeMieux*
George S. LeMieux
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Telephone: 954-462-2000
Facsimile: 954-523-1722
glemieux@gunster.com

/s/ *Timothy J. McGinn*
Timothy J. McGinn
600 Brickell Avenue, Suite 3500
Miami, Florida 33131
Telephone: 305-376-6000
Facsimile: 305-376-6010
tmcginn@gunster.com

Attorneys for Defendant JUUL Labs, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing is being served upon the

following by regular United States mail, postage prepaid:

| | |
|---|---|
| Scott P. Schlesinger<br>Jonathan R. Gdanski<br>Jeffrey L. Haberman<br>SCHLESINGER LAW OFFICES, P.A.<br>1212 SE Third Avenue<br>Ft. Lauderdale, FL 33316<br>Telephone: 954-467-8800<br>scott@schlesingerlaw.com<br>jgdanski@schlesingerlaw.com<br>jhaberman@schlesingerlaw.com<br><br>*Attorneys for Plaintiffs* | George S. LeMieux<br>450 East Las Olas Boulevard, Suite 1400<br>Fort Lauderdale, Florida 33301<br>Telephone: 954-462-2000<br>Facsimile: 954-523-1722<br>glemieux@gunster.com<br><br>Timothy J. McGinn<br>600 Brickell Avenue, Suite 3500<br>Miami, Florida 33131<br>Telephone: 305-376-6000<br>Facsimile: 305-376-6010<br>tmcginn@gunster.com<br><br>*Attorneys for Defendant JUUL Labs, Inc.* |
| Matthew Adams<br>ADAMS SANDLER LAW GROUP<br>37 N. Orange Ave., Ste. 500<br>Orlando, FL 32801<br>Telephone: 407-926-4144<br>mattadams@adamssandlerlaw.com<br>info@adamssandlerlaw.com<br><br>*Attorneys for Defendant My Vapor Hut, Inc.<br>d/b/a 1st Wave Vapor* | Melody Ridgley Fortunato<br>FORTUNATO & ASSOCIATES, P.A.<br>12 South East 7th Street - Suite 711<br>Fort Lauderdale, Fl 33301<br>Telephone: 954-728-1266<br>Fax: 954-728-1268<br>mrf@mfortunatolaw.com<br><br>*Attorneys for Defendant Edgar F. Di Puglia in his<br>capacity as owner of The Smoke House Smoke<br>Shop* |

DATED:   June 21, 2019

/s/ *Geoffrey J. Michael*
Geoffrey J. Michael
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999